The opinion of the court was delivered by
Tilghman, C. J.
This is an action brought by David Ellmaher against Steele and Potter, licenced auctioneers in the city of Philadelphia.
The plaintiff sent to the defendants certain goods, and an invoice of their sterling cost, with orders “ to sell them out at auction, at an average price of 50 per cent, advance on the sterling cost, as quoted in the invoice, and not otherwise.” The defendants sold the goods at less than the limited price, and the plaintiff claims the difference, between the limited price, and the price for which the goods were sold. The defendants contend that the plaintiff ought not to recover, because the sale, if made according to his order,, would have been fraudulent, and illegal. The defendants rely on the doctrine of Lord Mansfield, in Bexwell v. Christie, Cowp. 395. In delivering his opinion in that case, Lord Mansfield went into the general principles, by which sales at auction should be governed, and declared, that it would be a fraud in the crier of the goods to employ an agent to bid them up to a certain *88 limited price, without making it known; because real bidders might be thereby deceived. There were particular circumstances in that case, which might perhaps support the judgment which was given; but the general course of reasoning of Lord Mansfield has certainly been shaken by subsequent decisions. Bexwell v. Christie, was an action by the owner of a horse, against the auctioneer, for selling him at less than the limited price. One particular circumstance on which the court laid some stress, was, that the defendant, a public auctioneer, had advértised the sale “ of the goods and effects of a gentleman deceased, at his house in the country, by order of his executor. ” The conditions of the sale were, “ tl¿at the goods should be sold to the best bidder.” The plaintiff sent his horse, which didnotbelong to the estate of the deceased gentleman, to besold; and the belief that the horse belonged to that estate, might perhaps have raised him above his value in the estimation of the bidder. Lord Mansfield mentioned the case of a sale of wine, advertised as Mr. Bradshaio’s. A large quantity, belonging to other persons were sold, and all at a very high price, under a belief that they were Bradshaw’s. The consequence was, most of the buyers were taken in. Now if any thing unfair, can be fixed on the person yvho sends his goods to be sold by an auctioneer, he would not be permitted to support an action, for breach of orders.
But, upon general principles, Lord Mansfield’s opinion was, that all secret dealing on the part of the seller, is fraudulent. He may announce publicly, that the goods shall not go under a certain price — or, he may declare, as a condition of sale, that he reserves one bid for himself, and this would be fair dealing; but he must not employ an agent to bid up to a eertain price, without making it known. I agree, that the most proper way would be, to declare publicly that the goods was not to go, under a limited price, or that the owner reserved the right of a bid for himself. But I cannot say, that all other modes of sale are fraudulent. The governing principle is, that the buyer shall not be deceived by any secret manoeuvre of the seller. In order to decide whether a deception has been practised, much depends on the known custom of conducting sales at auction. If it is generally understood, that the seller reserves the right of bidding his goods in, at a limited price, unless the contrary be expressed as a condition of sale, then it is difficult to conceive, how it can be a deception to employ an agent to bid up to that price. Perhaps the tone of Lord Mansfield’s morality, was too lofty for the common transactions of business. Some men, may think it immoral, to purchase a thing at less than its value. Such was the opinion of the famous Roman lawyer, Scmvola, who having purchased a commodity at less than its value, held himself bound to pay the difference. B.ut in all probability, it will be long enough before an act of this kind will be recorded of any of outbidders at auctions. We must look at both sides of the question, The seller may be deceived, as well as the buyer. *89 Combinations may be formed.among the buyers, not to bid against each' ótjiór, and thus, unless the seller be permitted to defend himself, his^goods may be sacrificed. Having thrown out this general ideaybtVi 11 consider the" cases .which have been decided since Bexwell v. Christie. That decision was in 1776. Next came Howard v. Castle, 6 T. R. 642, before Lord Kenyon. There, Vie. employed several puffers, to bid against the defendant, 0lio’Ui 'cg>i%he -only real bidder. The sale was adjudged fraudulent, faddauseAhe. purchaser was.imposecíáli — he tliought he was bidding, pohtfendi% with real bidder. The seller limited no price, butemployed several persons to run the' property up as high as they cpuld. This Was unfair — any man may be imposed on by such artifices^ and therefore the sale was very properly held to be void. The Case of Brownly v. Alt, was in Chancery in the year 1798, before the . Master of the Rolls, Sir Pepper Arden, 3 Ves. 620. There, the sellers employed an'agent, to bid up to a certain sum, of which the auctioneer* but no other person, was informed. There •Ayas real bidding beyond the limited price, and after that, was the -bid of, the "purchaser, who wished to get off the bargain, on the ground of fraud. It was held, that the sale was .fair, and a specific performánce of the contract was decreed against the purchaser. The year before this decision, 1797, the case of Condly v. Parsons, came before the Chancellor. It was compromised after Lord Ross•lyn had intimated-a strong opinion, which probably produced the compromise. (3 Ves. 625, note.) The opinion was, that the seller might fairly employ an agent to bid up to a limited price, without making it publicly known. And under the same circumstances, the Master of the Rolls, (Sir William Grant,) held the purchaser to a specific performance, in Smith v. Clarke, 12 Ves. 477, A. D. 1806. None of-the courts have gone so far as to say, that the decision in Bexwell v. Christie was not law. But it is impossible to reconcile the general reasoning of Lord Mansfield, with the subsequent cases. Now then, to come to the ease before us. The defendant was ordered not to let the plaintiff’s goods go, under a certain price. It is agreed on all hands, (even by Lord Mansfield,) that it is fair to limit the price, provided it be made known. The defendant then, being-under "no injunction of secrecy, might have complied with the plaintiff’s orders, without violating the most fastidious rules of morality. Or, if he thought there would be some difficulty in doing this, (the order being, not to sell under a certain average,) he might have said so, and then the plaintiff must have been more expli-it in his directions. But without making any Objection,, or intimating any difficulty, the defendant accepted the commission, and then sold the goods, contrary to his instructions. I confess I cannot see* hów he can be justified, or what should prevent the plaintiff’s recovery, as there is no suggestion of anything unfair, in his conduct, or' intentions. I am of opinion, therefore, that the judgment should be affirmed. Judgment affirmed,