THIS case came up for trial at the November Term, 1861, in New Castle County, and after the evidence had been heard and the argument of counsel on both sides, upon the question of law involved in it, had been concluded, upon the suggestion of the Court that, as both the legal decisions and the text writers seemed to be in conflict on the subject, the counsel should consent to withdraw a juror, make a case-stated of it and reserve the question for a hearing before all the Judges in the Court of Errors and Appeals, to which their assent was given; whereupon the following case-stated was made by them, and now came up for a hearing before all the Judges in this court.
The cause of action in the case is a promissory note of the following tenor:
 $571.00 NEWARK, DEL., NOVEMBER 17th, 1859.
Sixty days after date, I promise to pay to the order of John Miller, Executor of T. C. Bradley, deceased, at the Bank of Newark, five hundred and seventy-one dollars without defalcation for value received.
 G. H. BAYNARD.
Thomas C. Bradley was in his life-time seized in fee of a tract of land in Pencader Hundred, in New Castle County, containing about one hundred and twenty acres with improvements, and duly made his last will and testament in writing and thereby devised as follows: Item first, I direct that all my estate real and personal, of which I shall die seized or possessed, shall be sold by my executor, except such articles of furniture as is hereinafter named, to as good advantage as possible, and the amount thereof secured in such manner as is usual in like cases, to insure the full and punctual payment thereof, and to effectuate this my intention, I do hereby vest in my executor full power and authority to dispose of my real estate in fee simple, or otherwise in as full and large a manner in every respect as I could do myself if living, and it is *Page 561 
my wish that the farm may not be sold until there is an advance in the price of land, as it ought to bring ninety or ninety-five dollars per acre. The said will bears date February 7th, 1859, was admitted to probate May 14th, 1859, and John Miller was appointed executor of it by the testator; and according to the directions of it, as executor, advertized and sold at public sale the said farm of the testator, on the 17th day of November, 1859, to the defendant, George H. Baynard for the sum or price of ninety-three dollars per acre. That at the sale the executor employed Capt. William Thompson in behalf of the estate to bid for the property; that the fact of the employment of Capt. Thompson so to bid, was not announced to the bidders then present, either before or during the sale; that Capt. Thompson did so bid, making his last bid at ninety-two dollars per acre for the farm. That the biddings after reaching eighty dollars per acre, were confined to the said Thompson and George H. Baynard. That when the biddings reached eighty-eight or ninety dollars per acre, there was testimony that the executor upon being interrogated by the said Thompson, declined to give any further instructions and left him to use his own discretion, but that the said Thompson testified that, he had no recollection of making such interrogatory, or of the reply of the executor, and that his bid of ninety-two dollars was made for and on behalf of the executor. That one of the conditions of the sale was "the highest bidder to be the purchaser," and that the defendant after the property was struck off to him, gave the note in question for the required percentage of the purchase money according to the conditions of sale. That a witness, who is a real estate agent, testified that George H. Baynard immediately after his purchase, placed the property in his hands for sale, and limited the price of it at one hundred dollars per acre. That on or about the 16th day of December, 1859, he informed the defendant that two persons had examined the property, he believed he could sell it for ninety dollars per acre, and that on the 21st of *Page 562 
December, 1859, the defendant in reply informed him that he had nothing to do with the Bradley farm, and referred him to Mr. Miller, the executor.
If under the foregoing statement of facts, the court shall be of opinion that the employment of the said Thompson by the executor to bid for him or the estate, was illegal, then it is agreed that judgment shall be entered for the defendant; but if, on the contrary, the court shall be of opinion that the said executor had a right to so employ the said Thompson as a bidder at the said sale, then judgment shall be entered for the plaintiff for the amount of the note, viz. $571 95/100 with interest from January 19th, 1860.
Rodney, for the plaintiff: The single question presented in the case was, whether a vendor Of land at auction can employ an underbidder without giving notice of it to the persons attending the sale. It was a question, he would admit, on which the authorities and decisions were somewhat in conflict, but the better opinion seemed to him to sustain the proposition, and held that he might. Most of the adjudged cases on the subject had been in the courts of equity, and the first he should refer to, was that of Bramley v. Ault, 3Ves. Jr. 620, in which it was held that where one person merely attended the sale and bid for the seller without notice of the fact, to a certain amount limited by the seller and then ceased, there having been other and real bidders to a higher amount, it would not vitiate the sale, or prevent a decree for a specific performance of the sale against the defendant, who was a real bidder at a higher amount. In the case stated and now submitted for the consideration and decision of the court, it would be observed that the vendor was selling, not for himself, but as a trustee and executor under the special instructions contained in the will of the testator, who had designated in it the price which he thought the land ought to bring, and which therefore bound him to be on his guard to see that it did not sell *Page 563 
below that price, or at a sacrifice. It was, therefore, under such circumstances, no fraud, nor even an impropriety on the part of such a trustee to employ a single bidder merely to prevent the sale of the land below the price indicated in the will, and not for the purpose of screwing up the price against real and bona fide
bidders, which, he would admit, would be fraudulent. But where the bidder and purchaser intends to repudiate the contract of sale for such a reason, he should immediately declare at the time of the sale, that he will not be bound by his bid for that reason, or he will not be released from it. Conolly v. Parsons, 3 Ves. Jr.
625 in note. In the case of Smith v. Clarke, 12Ves. Jr. 477, which was for a specific performance of the contract of sale, a person was privately employed to bid for the vendors and limited by them to a certain specified price, at which he was the last and highest bidder but one, the purchaser being the next and highest bidder at an advance upon that price, and sought to repudiate it on that ground; but the vendors were assignees in bankruptcy and were selling as such, which circumstance was specially noticed by the Master of the Rolls in announcing his opinion, which was, that in such a case, it was no evidence or badge of fraud to employ such a bidder, the object being to prevent a sacrifice of the property by a sale of it below its value, and not to take advantage of the eagerness of real bidders to screw up the price. And the specific performance prayed for was decreed. The same distinction was taken and the same principle was ruled by Ld. Kenyan, M. R. inTwining v. Morrice, 2 Bro. Ch. Rep. 331. And in the late case of Flint v. Woodin, 13 E. L. E. R. 278, the Vice Chancellor remarked that he would not infer from the mere fact that one person amidst many bidders, was employed to bid for the seller, that it was for the purpose of screwing up the price, or to take advantage of the ignorance of the other bidders; and that therefore he could not consider it fraudulent, or for that reason refuse to decree a specific performance of the contract of sale. But when *Page 564 
more than one person, as where several are employed by the vendor to bid, it will be considered that they were fraudulently procured to stimulate the bidding and screw up the price, and it will consequently be held to vitiate and avoid the sale. The English cases on the subject had been ably reviewed by Tilghman C. J. in the case ofSteele v. Ellmaker, 11 Serg. Rawle 86, and the doctrine of Lord Mansfield announced in Bexwell v. Christie,Cowp. 375, that it would be a fraud in the crier of goods to employ an agent to bid them up to a certain price limited by him, without making it known, because real bidders might be thereby deceived, was held to be too lofty perhaps, in the tone of its morality for the common transactions of business, and in which the distinction and conclusion which he had stated, was fully recognized and sustained. The following authorities were also to the same effect. 2 Kent's Com. 538. Add. on Contr. 154. Sug. onVend. 20. Babb. on Auctions, 19 Law Libr. 51.
Whitely, for the defendant: In principle there could be no doubt that the employment of a secret bidder or puffer at an auction, whether one or more in number, was contrary to fair dealing, sound morality and good faith which it was the policy of the law to maintain in all business transactions, and ought to vitiate a contract of sale when it was effected by such fraudulent and dishonest means. Such was the opinion of Chancellor Kent, as announced in the second volume of his commentaries, page 539, and such was the original doctrine of the Court of King's Bench, and of such judges as Lord Mansfield and Lord Kenyon, and was still the doctrine of the courts of England, as he should show, from the time of the decision in the case of Bexwellv. Christie, 1 Cowp. 395, down to the present day. InHoward v. Castle, 6 T. R. 643, Lord Kenyon fully sustains the reasoning and ruling of Lord Mansfield in that case, and the same was the doctrine clearly stated and established in Crowder v.Austin, 12 E. C. L. R. 93. Wheeler v. Collier, 22 E. C. L.R. 266. *Page 565 Thornet v. Haines, 15 Mees. Wels. 367, and inRex. v. Marsh, 3 Young Jerv. 331. In all the cases cited by him, and in which the opinions of Lords Mansfield, Kenyon, Tenterden and Barons Pollock and Alexander concur, and which brought the decisions down to the present time in that country, it was distinctly held and ruled that the employment of any one by the seller without notice, to bid the property up to a certain limited price, or to act as a puffer generally at a public sale without reserve, was a fraud against real bidders, and as such, would vitiate and avoid the sale in law, whether repudiated by the purchaser at the time of the sale, or afterward; and the same principle had been recognized and established in this country. Veazie v. Williams, 8 How.134. Phippin v. Stickney, 3 Metc. 384. Pennock'sAppeal, 2 Harris' Rep. 446; and which latter case had overruled the preceding decision in Pennsylvania in the case of Steele v.Ellmaker cited on the other side.
Rodney, in reply: All the authorities cited on the other side, with one exception perhaps, were consistent with the cases which had been cited by him. In the case of Bexwell v. Christie the question arose between the vendor and his agent or bidder, who had exceeded his instructions, and therefore was not between the vendor and purchaser, as in the present case. The case of Crowder v.Austin was not entitled to much consideration, as any one would discover who would attentively read the report of it. Besides, it was a case of the sale of a horse, which was widely different from a sale of land, especially by a trustee. In Wheeler v. Collier there were two puffers, both of whom were authorized by the vendor to bid the property up to sixteen hundred pounds, and Lord Tenterden expressly rested his decision of the case upon that ground, and remarked in announcing it, that it was not a case in which one person only was employed to bid, and therefore he was not called upon to express any opinion in such a case. But as he had before admitted, so he again *Page 566 
conceded, that whenever two or more persons were privately and secretly employed by the vendor to bid, it was always considered an indicium of fraud, and that they were engaged as puffers to stimulate the bidding of others and to enhance the price. And that was the extent of the ruling and the identical principle established in the case of Thornet v. Haines. It would be observed too, that the sale in that case was advertised to be made without reserve, the import of which was that no one would be employed to bid or to enhance the price. Sug. on Vend. 25. The case of Rex v. Marsh
could hardly be considered a case in point, or a sound ruling in itself, inasmuch as by the terms and conditions of the advertisement of the sale, the right was reserved to the agent of it, to make one bid, and if the property did not go above that, it was to be no sale. In the case of Phippin v. Stickney the question was the converse of what it was in all the other cases, and presented the contrary inquiry whether a combination among the real bidders to depress the sale of the property would vitiate it, upon which the court held that under certain circumstances, such a combination might be allowable and would not invalidate the sale. In the decision if it, something it is true, was said in regard to the question now before this court, but it was not then before that court, nor was it, at all, essential to be considered in the decision of that case. And as to Veazie v.Williams, the court would perceive from the report of the facts and circumstances involved in it, that it was a clear case of actual and unmitigated fraud, not on the part of the vendor, who was in no wise implicated in it, but on the part of his agent, the auctioneer, who, by a combination with the puffers employed by him for the purpose, effected a sale of the goods at thrice their value, in order simply to increase the amount, of his commissions on the sale of them. But it would also be observed that in that case the court was careful not to impugn the soundness of the ruling in the cases which he had cited in his opening, for it expressly refers to them and adds that it did *Page 567 
not mean to impeach them, but on the contrary, recognized the principle established by them. He would, however, only say further in regard to it, that it was decided by a majority only of the members of the court, in which Taney, C. J. and McLean and Grier, Justices, dissented.
The question reserved in this case, comes before us, on a case stated by the parties. It is a question, I think, of first impression, in the courts of this state; and hence, it is important that it should be decided correctly and upon principle; more especially, as the rulings at law, and in equity, are not altogether in accord. The courts of law appear to have somewhat more sharply defined the rule in respect to this subject, than the courts of equity. The material facts are very few. According to the conditions of the sale, the highest bidder was to be the purchaser; and yet Miller, the seller, employed one Captain Thompson, to bid on behalf of the estate, without making that fact known to the bidders either before or during the sale. The bidding, after it reached eighty dollars per acre, was confined to Captain Thompson, and Geroge H. Baynard, who became the purchaser. Thompson was not a real bidder, but was employed by the seller to enhance the price of the property.
The question, therefore, for our decision, is simply this; whether secret by-bidding, or puffing, at a public sale, is lawful? We think it is not. It seems to us that the employment of a puffer to enhance the price of the property, is not only opposed to the soundest principles of public policy, but that a sale made under such circumstances is a fraud upon the purchaser, and consequently is invalid at law. The simple fact of offering property for sale, at public auction, is an invitation to all persons, to come together and bid for the same, upon fair and equal terms, and indeed, is equivalent to a public declaration that the sale shall be conducted fairly and in good faith toward all bidders. Any secret arrangement, *Page 568 
therefore, having a tendency to mislead a bidder, is in our opinion, a serious departure from fair dealing, and if the price be thereby enhanced, it clearly amounts to a deception practiced by the seller upon the purchaser, advantageous to the former, and injurious to the latter. In point of morals, is not such an arrangement wrong? And if so, is it right to permit him, either at law or in equity, to avail himself of the fruits of an advantage obtained by artifice or deception? But in this case, by the express terms of the sale, the highest bidder was to be the purchaser. Have these terms no significance? Or rather, do they not mean, the highest bidder shall be the purchaser? Lords Mansfield, Kenyon, and Tenterden evidently thought so. In delivering the judgment of the Court of King's Bench in the case of Bexwell v. Christie, Cowp. 396, Lord Mansfield lays down the only true and safe doctrine, applicable to such sales. He says "The basis of all dealings ought to be good faith; so, more especially, in these transactions where the public are brought together upon a confidence that the articles set up to sale, will be disposed of to the highest bidder; that could never be the case, if the owner might secretly and privately enhance the price by a person employed for that purpose." And Lord Kenyon in Howard v. Castle, 6T. R. 642, expressly declares that the doctrine held by Lord Mansfield in respect to by-bidding at auction sales, was founded "on the noblest principles of morality and justice."
These cases have been approved and followed among others, byWheeler v. Collier, 1 Moody Malk 126. Crowder v.Austen, 2 Carr Payne 208. Thornet v. Haines, 15Mees. Wells. 367. Rex. v. Marsh, 3 Younge Jervis 331. 11 Paige Rep. 431. Phippen v.Stickney, 3 Metcalf 386. Veazie v. Williams, 8Howard 134. And there is no hardship in the rule which these cases establish, for it is perfectly competent for the seller to fix a minimum price, or to reserve to himself the right to bid, or to employ another to bid for him, but he must give fair notice of the fact, so that *Page 569 
no one may be misled or deceived in such a sale. The case ofBexwell v. Christie was decided in the year 1776, and remained the settled rule in England, for a period of upwards of twenty years; when in 1797, the soundness of the doctrine of that case was called in question for the first time by Lord Loughborough, who, in Conolly v. Parsons, attempted to sanction the practice of secret bidding or puffing. He was followed, first, by Sir Richard Pippin Arden, (afterward Lord Alvanley) then Master of the Rolls, in the case of Bramley v. Ault, and then by Sir William Grant, in the case of Smith v. Clark. And it is on the authority of these equity cases, that the learned counsel for the plaintiff mainly relies, as showing a relaxation of the stringency of the rule at law, in the earlier cases forbidding puffing. The case of Steel v.Ellmaker, 11 Serg. Rawle 86, having been overruled by Pennock's Appeal, 14 Penn. State Reps. (2Harris) 446, can no longer be considered an authority on the point, in favor of the plaintiff.
It seems to me, however, that a full answer to the equity cases, is to be found in the subsequent decisions, both in England and in this country, approving and following the original doctrine of Lord Mansfield, the governing principle of which doctrine is, that the buyer shall not be deceived by any secret management of the seller.Crowder v. Austin, 2 Carr Payne 208. Wheeler v. Collier,
1 Moody Malk 123. Veazie v. Williams, 8 Howard's Sup. Ct.Reps. 134. Chancellor Kent concludes his review of these several decisions, by declaring the doctrine of the earlier cases, most "just and salutary." He says "no person ought, in any case, to be employed secretly to bid for the owner against the bona fide bidder at a public auction. It is fraud in law upon the very face of the transaction, and the owner's interference and right to bid, in order to be admissible, ought to be intimated in the conditions of sale; and such a doctrine has recently been declared in Westminster Hall." 2Kent's Com. 6th edition, 538, 539. Considering, therefore, that the employment of said *Page 570 
Thompson to bid for the seller at the sale, without any notice of that fact having been communicated to the bidders, was illegal and fraudulent, we are of opinion, that judgment ought to be entered for the defendant; and we order the certificate to be made out in accordance with this opinion. *Page 571